IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CHAD GIDDINGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-CV-2520 JWL/GLR |
| | ) | |
| FLEETCOR TECHNOLOGIES OPERATING COMPANY, INC. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CORPORATE LODGING CONSULTANTS INC. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Chad Giddings filed this action against FleetCor Technologies Operating Company, Inc. ("FleetCor") and Corporate Lodging Consultants, Inc. ("CLC") (collectively "defendants") for breach of his employment contract. Mr. Giddings alleges that his prior employer, CLC, obligated itself to pay Mr. Giddings certain severance benefits in the event of his termination due to a Change in Control in the ownership of CLC. Having not been paid such severance benefits, Mr. Giddings asserts claims for breach of the employment contract and for breach of the implied covenant of good faith and fair dealing. This matter presently comes before the Court on defendants' motion to dismiss the entire complaint for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6)

(Doc. #8). For the reasons set forth below, the Court grants defendants' motion but grants Mr. Giddings until January 25th, 2010 to file an amended complaint.

I. Background Facts

On September 24th, 2008, Mr. Giddings entered into an employment agreement with CLC (the "Agreement"), providing for Mr. Giddings' employment as the Senior Vice President of Marketing at CLC's Overland Park, Kansas location. In addition to setting forth Mr. Giddings' base salary and benefits, the agreement contained the following language regarding a severance package:

> If prior to April 7, 2009 there is a Change of Control in the ownership of the Company that directly results in a termination of your employment by the Company for reasons other than cause, within two (2) months of such Change of Control, you will receive a severance benefit in the form of base salary continuation for a period of six months from the date of such termination…

CLC offered Mr. Giddings this severance benefit as an incentive to accept employment with CLC. Mr. Giddings accepted CLC's offer of employment in consideration of the severance package.

"On or about" April 2nd, 2009, FleetCor acquired CLC, a change that Mr. Giddings claims constituted a "Change of Control" under the terms of the employment agreement. On June 2, 2009, Mr. Giddings e-mailed Crystal Williams, FleetCor's Vice President of Global Human Resources, inquiring into his severance rights under the Agreement.[1] On

---

[1] In his memorandum in opposition to the motion to dismiss, Mr. Giddings states that he inquired into his severance benefits because he "was led to believe that his employment

2

June 5, 2009, management notified Mr. Giddings that he would be terminated, effective June 15, 2009, as it had been decided after acquisition of CLC that marketing would be relocated from Overland Park to Atlanta, Georgia. On June 8, Mr. Giddings again emailed Ms. Crystal Williams, to assert his right to severance benefits under the Agreement. According to Mr. Giddings, his inquiries regarding his severance benefits were ignored. On June 12, Mr. Giddings was informed that his severance benefits would not be paid. His termination became effective on June 15. At the time of his termination, Mr. Giddings received an annual salary of $200,000 per year.

II. Applicable Standards

The Court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.E.2d 929 (2007), or when an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic* at 1964-65. The Court must accept the facts alleged in the complaint as true, even if doubtful in fact, *id.* at 1965, and view all reasonable inferences from those

---

would be terminated" and he therefore "wanted to ensure that defendants would honor the severance clause of the Agreement."

facts in favor of the plaintiff, *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 127 S.Ct. at 1965 (citations omitted). The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

III. Discussion

A. Choice of Law

A federal district court sitting in diversity over a non-federal claim must apply the law of the forum state, including its choice of law principles. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Century 21 Real Estate Corp. v. Meraj Int'l Inv. Corp.*, 315 F.3d 1271, 1281 (10th Cir. 2003). The parties agree that Kansas law governs the questions of whether defendants' breached their contractual obligations to Mr. Giddings and whether Mr. Giddings may recover damages for an alleged breach of the implied covenant of good faith and fair dealing. *See generally Layne Christensen Co. v. Zurich Canada*, 30 Kan.App.2d 128, 142, 38 P.3d 757, 766 (Kan.Ct.App. 2002).

B. Breach of Contract

     Mr. Giddings contends that the defendants breached their obligations under the Agreement by refusing to pay severance benefits to which he claims an entitlement. According to the complaint, the acquisition of CLC by FleetCor "on or about" April 2, 2009 resulted in a "Change of Control" in the ownership of CLC that directly led to his subsequent termination on June 15, 2009.[2] Mr. Giddings contends that his termination, without cause, triggered CLC's obligation to pay him the severance benefit provided for in the employment contract (a base salary continuation for a period of six months from the date of his termination, or $100,000) and that the contract required this amount to be paid within two months of his termination, or by August 15, 2009. In response, the defendants contend that the relevant contract provision clearly and unambiguously provided for the payment of such severance benefits only in the event that CLC terminated Mr. Giddings' employment within two months of the "Change of Control." As Mr. Giddings conceded in his original petition that he was terminated on June 15, 2009, more than two months after the alleged "Change of Control" on April 2, the defendants assert that Mr. Giddings never became entitled to the severance benefits and

---

[2] In his memorandum in opposition to the motion to dismiss, Mr. Giddings appears to retract his factual pleadings regarding the date upon which the "Change of Control" occurred. In the original complaint, Mr. Giddings stated that FleetCor acquired CLC and assumed its contractual obligations "on or about April 2, 2009," and that this transaction resulted in a "Change of Control." In Mr. Giddings' memorandum, he states that the date of the "Change of Control" actually remains unknown, as it is an undefined contractual term, and that this ambiguity prevents this Court from granting defendants' motion to dismiss. If Mr. Giddings seeks to change the factual averments contained within his original complaint, he must formally file an amended complaint pursuant to Fed.R.Civ.P. 15(a).

that their consequent refusal to pay them did not breach their contractual obligations.[3]

The parties thus disagree as to the proper interpretation of the contractual language and whether the relevant provision may be considered "ambiguous," such as to preclude dismissal at this stage in the proceedings.

When interpreting a written contract, the Court seeks to ascertain the intent of the parties. *Santana v. Olguin*, 41 Kan.App.2d 1086, 1089, 208 P.3d 328, 332 (Kan.Ct.App. 2009). If the contract is not ambiguous, the "intention of the parties and the meaning of the contract must be determined exclusively from the instrument itself." *Park Univ. Enterprises, Inc. v. American Cas. Co. of Reading, PA*, 314 F. Supp. 2d 1094, 1100 (D. Kan. 2004) (applying Kansas law) (citing *Rigby v. Clinical Reference Lab, Inc.*, 995 F. Supp. 1217, 1226 (D. Kan. 1998). On the other hand, if the contract is ambiguous on its face, such that additional clarification is necessary, the Court will consider evidence of the facts and circumstances surrounding the contract's execution. *Pioneer Ridge Nursing*

---

[3] As with the date upon which the "Change of Control" occurred, Mr. Giddings has seemingly changed his original position on precisely when his termination occurred. In his original complaint, Mr. Giddings stated that he was notified of his termination on June 5, 2009 and that the termination became effective on June 15, 2009. He additionally asserted that the Agreement obligated the defendants to pay his severance benefits within two months of the termination, or "by August 15, 2009." Thus, in the original complaint, Mr. Giddings seems to contend that his termination occurred on June 15. In the memorandum, on the other hand, Mr. Giddings states that the defendants terminated his employment "on [or] about June 5, 2009." He also states that while he was notified on June 5, there exists ambiguity as to when "defendants actually made that termination decision," apparently attempting to argue that the termination may have occurred prior to even June 5. As with the issue regarding when the "Change of Control" occurred, the Court finds the question of whether Mr. Giddings had been terminated prior to June 15, 2009 irrelevant for present purposes, but notes that if Mr. Giddings wishes to amend the factual averments in his complaint, he must formally file an amended complaint pursuant to Fed.R.Civ.P. 15(a).

*Facility Operations, L.L.C. v. Ermey,* 41 Kan.App.2d 414, 419, 203 P.3d 4, 8 (Kan.Ct.App. 2009). Whether a particular contract provision is ambiguous is a question of law. *Liggatt v. Employers Mut. Casualty Co.*, 273 Kan. 915, 921, 46 P.3d 1120 (2002). Before determining that a contract is ambiguous, the language must be given a "fair, reasonable, and practical construction." *Id*. A contract does not qualify as ambiguous simply because the parties disagree as to its meaning. *Antrim, Piper, Wenger, Inc. v. Lowe*, 37 Kan.App.2d 932, 938, 159 P.3d 215, 220 (Kan.Ct.App. 2007). However, a contract is to be considered ambiguous where "two or more meanings can be construed from the contract provisions." *Carrothers Const. Co., L.L.C. v. City of South Hutchinson*, 288 Kan. 743, 751, 207 P.3d 231, 239 (2009). As explained by the Kansas Court of Appeals:

> For a contract to be found ambiguous, it must contain language of doubtful or conflicting meaning based on a natural and reasonable interpretation of the agreement's language. A contract is ambiguous if, after applying appropriate rules of interpretation to the face of the instrument, there remains a genuine uncertainty which one of two or more meanings is the proper meaning.

*Jones v. Reliable Sec. Inc.*, 29 Kan.App.2d 617, 626-27, 28 P.2d 1051, 1059 (Kan.Ct.App. 2001). This Court should not reach an interpretation of a contractual provision "merely by isolating one particular sentence or provision," but rather "by construing and considering the entire instrument from its four corners." *Santana*, 41 Kan.App.2d at 1089, 208 P.3d at 332 (quoting *City of Arkansas City v. Bruton*, 284 Kan. 815, 832, 166 P.3d 992 (2007)).

The Court agrees with defendants that the provision in his employment contract setting forth the terms upon which he would be entitled to receive severance benefits is unambiguous. The provision states:

> If prior to April 7, 2009 there is a Change of Control in the ownership of the Company that directly results in a termination of your employment by the Company for reasons other than cause, within two (2) months of such Change of Control, you will receive a severance benefit in the form of base salary continuation for a period of six months from the date of such termination…

According to Mr. Giddings, this language obligated defendants to pay him severance benefits in an amount equal to six months of his annual salary, or $100,000, within two months of his termination, or by August 15, 2009. However, such an interpretation is simply not plausible. The Agreement nowhere states that Mr. Giddings will be paid within two months of a qualifying termination. If the phrase "within two (2) months" is not read to limit the defendants' liability to pay severance benefits in the manner defendants assert, then the only other potential reading of the language is that Mr. Giddings must be paid the severance benefits within two months of the relevant *Change of Control*. The interpretation proffered by Mr. Giddings would be plausible only if the Agreement stated: "if prior to April 7th, 2009 there is a Change of Control in the ownership of the Company that directly results in a termination of your employment by the Company for reasons other than cause, within two (2) months *of such termination*, you will receive…"[4]

---

[4] Mr. Giddings contends that the placement of the comma immediately before the phrase "within two (2) months of such Change of Control" renders the entire severance

Thus, if the Agreement were not construed in the manner asserted by defendants, there would remain only one potential interpretation, one that Mr. Giddings does not himself assert. Moreover, the Court concludes that it would be unreasonable to construe the Agreement in this alternative manner, as requiring payment of the severance benefits regardless of the timing of the termination, so long as the termination results from a Change of Control occurring before April 7th. The Court views this as an unreasonable construction because it would mean that Mr. Giddings would have to be paid the severance benefits within two months of the Change of Control, or at least by June 7th, 2009, regardless of whether he had yet been terminated. It would not only be illogical to require the payment of severance benefits before termination, but would also be contrary to the explicit contractual prerequisite that Mr. Giddings have first been terminated as a result of a Change of Control. Therefore, the Court concludes that the only reasonable construction of the Agreement is that asserted by the defendants, or that Mr. Giddings would be entitled to payment of severance benefits only if terminated within two months of a Change of Control.

Such an interpretation of the Agreement is buttressed by the fact that the severance benefits were to come in the form of a "base salary continuation." If Mr. Giddings were

---

provision subject to different interpretations, including his own. He argues that the comma causes the reader to pause and that its placement thus leads the reader to conclude that a new idea is being conveyed. However, the improper placement of a comma should not render ambiguous an otherwise unambiguous contract provision. *See Payless Shoesource, Inc. v. Travelers Cos., Inc.*, 585 F.3d 1366, 1368 (10th Cir. 2009) ("But while misplaced modifiers are syntactical sins righteously condemned by English teachers everywhere, our job is not to critique the parties' grammer, but only, if possible, to adduce and enforce their contract's meaning. Here, a punctuation peccadillo notwithstanding, the meaning of the parties' contract is unambiguous.").

entitled to severance benefits, their payment in the form of a "continuation" of his base salary implies that he should receive these benefits over a period of several months (here, six) rather than all at once, at a certain point in time after his termination. The only interpretation of the Agreement consistent with the concept of a "base salary continuation" is that suggested by defendants, as it would permit the benefits to be paid over the course of six months from termination, rather than requiring their payment within two months from a certain occurrence (whether the Change of Control or termination).

For these reasons, the Court concludes that the Agreement permits only one logical interpretation—the interpretation espoused by the defendants. Therefore, the Court finds the relevant contractual language clear and unambiguous under the applicable Kansas standards.[5] As Mr. Giddings did plead that his termination occurred on June 15, 2009, more than two months after the alleged "Change of Control," the Court finds that defendants' motion to dismiss must be granted. Nonetheless, the Court finds it appropriate to grant Mr. Giddings' request for leave to amend the complaint in light of the fact that his supporting memorandum seemingly altered his prior position regarding when the "Change of Control" and the termination may have occurred.

---

[5] Mr. Giddings also contends that this Court should construe any doubts about the language of the Agreement against defendants, its drafters. If the Court determines that ambiguity exists, that ambiguity must be construed against the drafter. *Carter Petroleum Products, Inc. v. Bhd. Bank & Trust Co.*, 33 Kan.App.2d 62, 66, 97 P.3d 505, 509 (Kan.Ct.App. 2004). However, the Court concludes that there is no such ambiguity.

C. Breach of the Covenant of Good Faith and Fair Dealing

Mr. Giddings additionally asserts that the defendants' refusal to pay his severance benefits under the terms of the Agreement constitutes a breach of the covenant of good faith and fair dealing. He argues that the defendants acted in bad faith by ignoring his inquiry to Ms. Williams about his contractual rights to severance benefits[6] and by subsequently refusing to honor their contractual obligations. The defendants, on the other hand, argue that the covenant of good faith and fair dealing cannot apply to Mr. Giddings' situation under Kansas law, as he remained at all times an at-will employee who could be terminated with or without cause. Conceding that he qualified as an at-will employee, Mr. Giddings contends that the "employment-at-will" exception to the covenant of good faith and fair dealing cannot apply to his particular claim, as he does not assert a claim for wrongful termination. In other words, Mr. Giddings argues that the covenant of good faith and fair dealing remains applicable to his claim despite the fact that the employment contract allegedly breached provided for his at-will employment, because he does not contend that his *termination* breached the covenant of good faith and fair dealing. Rather, he alleges that defendants' breached the covenant by ignoring his inquiries and by failing to pay his severance benefits. For the reasons explained below, the Court agrees with Mr. Giddings that Kansas law would permit him to assert a claim for breach of the implied covenant of good faith and fair dealing based upon a separate contractual obligation contained within Mr. Giddings' employment agreement, such as

---

[6] Mr. Giddings contends that the defendants "hemmed and hawed," in bad faith, purposefully waiting to explain the situation until the passage of what they believed was sufficient time to relieve them of their contractual obligation to pay the severance benefit.

the agreement here to pay severance benefits. Nevertheless, as articulated, the Court finds that Mr. Giddings has not set forth a claim for relief. The Court however also grants Mr. Giddings leave to file an amended complaint as to his claim for breach of the implied covenant of good faith and fair dealing.

1. The Employment At-Will Exception to the Covenant of Good Faith and Fair Dealing

In *Morriss v. Coleman Co., Inc.,* the Kansas Supreme Court held that the wrongful termination of an at-will employee does not violate any implied covenant of good faith and fair dealing. 241 Kan. 501, 518, 738 P.2d 841, 851 (1987). The plaintiffs in *Morriss* had been terminated by their employer seemingly on the basis of a supervisor's moral objection to their conduct. *Id.* at 507. The plaintiffs contended that their employer breached the implied covenant of good faith and fair dealing by terminating their employment in bad faith, without cause. However, as noted above, the Kansas Supreme Court determined that the covenant should not be applicable to employment-at-will contracts, and thus rejected their claim. *Id*. at 518.

*Morriss* is an exception to the otherwise broad application of the covenant of good faith and fair dealing in Kansas. Indeed, Kansas cases have repeatedly emphasized that the covenant of good faith and fair dealing applies to all contracts, aside from those in the employment-at-will context. *See Bonanza, Inc. v. McLean*, 242 Kan. 209, 222, 747 P.2d 792, 801 (1987); *Daniels v. Army Nat'l Bank,* 249 Kan. 654, 658, 822 P.2d 39, 43 (1991); *Kansas Baptist Convention v. Mesa Operating Ltd. P'ship*, 253 Kan. 717, 724, 864 P.2d 204, 210 (Kan. 1993); *Law v. Law Co. Bldg. Associates*, 42 Kan.App.2d 278, 285, 210

12

P.3d 676, 682 (Kan.Ct.App. 2009). As explained in *Kansas Baptist Convention*, *Morriss* addressed whether the covenant should be recognized in the limited area of termination of employment contracts. 253 Kan. at 724, 864 P.2d at 210. It is generally only within this limited context that the covenant will be deemed inapplicable. *See id.* An at-will employee may therefore assert a claim for breach of the implied covenant of good faith and fair dealing where the employee does not contend that he has been wrongfully terminated but rather that the employer in some manner breached the covenant as to a separate contractual obligation contained within his employment agreement.[7] As Mr. Giddings' claim is founded upon such a separate contractual obligation, the Court finds the employment-at-will exception inapplicable.

2. Injury

In response to Mr. Giddings' claim for breach of the implied covenant, the defendants asserted only the argument rejected by this Court that the employment-at-will exception encompasses such a claim. Nevertheless, the Court concludes that, as articulated, Mr. Giddings has not stated a claim for relief. Mr. Giddings asserts two separate bases for his claim that the defendants breached the implied covenant. First, he

---

[7] Defendants cite to *Booth v. Electric Data Sys. Corp.*, 799 F. Supp. 1086, 1092 (D. Kan. 1992), in support of the idea that the employment-at-will exception to the covenant of good faith and fair dealing applies to all agreements surrounding the employment relationship. However, *Booth* was a wrongful discharge action and addressed the covenant of good faith and fair dealing in the context of the employee's allegedly wrongful discharge. *Id.* Mr. Giddings, as noted above, is not asserting a claim for wrongful discharge and therefore is not arguing that the covenant of good faith and fair dealing was breached by his *termination*. Therefore, the Court finds the defendants' reliance upon *Booth* misplaced.

13

contends that the defendants breached the implied covenant by failing to pay the severance benefits to which he was entitled. However, the Court has found no obligation on the part of the defendants to pay such benefits, under the facts as currently pled. Second, Mr. Giddings claims that the defendants breached the implied covenant by ignoring inquiries he made regarding his rights to severance benefits under the Agreement. Yet Mr. Giddings has not shown how the failure of defendants to answer his inquiry caused him any harm, a necessary element to his claim. *See Dunn v. First Nat'l Bank of Olathe*, 111 P.3d 1076, 2005 WL 1277949, at *5 (Kan.Ct.App. May 27, 2005) (unpublished opinion). Therefore, the Court dismisses Mr. Giddings' claim for breach of the implied covenant of good faith and fair dealing, but permits him leave to file an amended complaint in the event he believes he can demonstrate that the manner in which the defendants failed to pay his severance benefits somehow violated the covenant.[8]

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) (Doc. #8) is **granted** but the Court grants Mr. Giddings until January 25, 2010 to file an amended complaint.

**IT IS SO ORDERED** this 8th day of January, 2010.

---

[8] Defendants contend that Mr. Giddings should not be permitted leave to file an amended complaint because he has failed to comply with Fed.R.Civ.P. 7 or D. Kan. Rules 7.1 or 15.1. However, "[i]t is settled that the grant of leave to amend the pleadings pursuant to [Fed.R.Civ.P. 15(a) is within the discretion of the trial court." *Miller v. Bd. Of Educ. of Albuquerque Public Schools*, 565 F.3d 1232, 1249 (10th Cir. 2009) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971).

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge